

Sealed

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

20 20265 *CV-Bloom*

**CASE NO.** _____

FILED BY ___/MM___ D.C.

JAN 22 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

NFL PROPERTIES LLC, a Delaware limited
liability company; FORTY NINERS
FOOTBALL COMPANY LLC, a Delaware
limited liability company; and KANSAS CITY
CHIEFS FOOTBALL CLUB, INC., a Texas
corporation,

      Plaintiffs,                **FILED UNDER SEAL**

vs

JOHN OR JANE DOES 1-200, and JOHN
DOE COMPANIES 1-100,

      Defendants.

_____/

## PLAINTIFFS' VERIFIED COMPLAINT

**LOTT & FISCHER, PL** • 255 Aragon Avenue • Third Floor • Coral Gables, FL 33134
Telephone: (305) 448-7089

CASE NO. _____

NFL Properties LLC ("NFLP"), Forty Niners Football Company LLC (the "49ers Club"),

and Kansas City Chiefs Football Club, Inc. (the "Chiefs Club") (collectively, "Plaintiffs"), file this

Original Verified Complaint, concurrently with their Motion for *Ex Parte* Temporary Restraining

Order and Seizure Order, and respectfully show this Court the following:

## INTRODUCTION

1.      Trademark counterfeiting is an illegal, multi-billion dollar business that (a)

deceives consumers into believing they are buying genuine goods when they are actually buying

poor quality, unlicensed counterfeited goods and (b) deprives brand owners of revenue and

subjects them to a loss of goodwill because the counterfeits are of lesser quality or no value.

Defendants in this case consist primarily of large-scale, professional counterfeiters—who produce

counterfeit, unlicensed merchandise ("Counterfeit Merchandise") bearing the trademarks, logos,

and/or other identifying indicia of the National Football League (the "NFL") and/or the NFL

member clubs ("Member Clubs") and counterfeit, unredeemable Super Bowl game tickets

("Counterfeit Tickets") for distribution—and largely anonymous, mobile middlemen and street

vendors who sell the Counterfeit Merchandise and Counterfeit Tickets. By selling the Counterfeit

Merchandise and Counterfeit Tickets, Defendants seek to trade off the enormous popularity of the

NFL and its championship game, as well as the goodwill inherent in Plaintiffs' valuable and

famous trademarks and the trademarks of the Member Clubs.

2.      The NFL and its Member Clubs annually present a season of football games which

culminates in a championship game known as the Super Bowl game. The Super Bowl game is the

country's premier sporting event. Last year, the Super Bowl LIII game, played in February 2019

between the New England Patriots and the Los Angeles Rams, was watched by more than 98

CASE NO. _____

million viewers and was the most watched television program in the U.S. for 2019. Super Bowl LII, played in February 2018 between the New England Patriots and Philadelphia Eagles, was watched by more than 103 million viewers. This year, the professional football teams, the 49ers Club and the Chiefs Club, will be competing in Super Bowl LIV, which will be played at the Hard Rock Stadium in Miami Gardens, Florida, on Sunday, February 2, 2020.

      3.     Numerous official Super Bowl LIV-related events are scheduled to take place in and around Miami-Dade, Broward, Palm Beach, Monroe, and St. Lucie Counties on the days leading up to the Super Bowl game on February 2, 2020. Some examples include "Super Bowl Live" at the Bayfront Park, the "Super Bowl Experience" at the Miami Beach Convention Center, the OLE Concert Series at American Airlines Arena, the NFL Honors event at the Adrienne Arsht Center for the Performing Arts of Miami-Dade County, and the "NFL Tailgate" at Hard Rock Stadium, which are open to the public from as early as January 25, 2020 until as late as February 2, 2020.

      4.     Along with the immense worldwide attention focused on the Super Bowl game, unfortunately comes a significant number of individuals and entities who seek to unfairly dupe fans and profit from Plaintiffs' substantial goodwill by selling Counterfeit Merchandise and Counterfeit Tickets. Before the Super Bowl game, itinerant Defendants will descend on South Florida to distribute their Counterfeit Merchandise and Counterfeit Tickets for ultimate cash resale and disappear without a trace. These individuals and companies often utilize fictitious names, business addresses and sham forms of business organizations.

      5.     Defendants' counterfeiting irreparably injures the public and Plaintiffs. Defendants deceive consumers into mistakenly believing that they are purchasing genuine authorized products

3

**LOTT & FISCHER, PL** • 255 Aragon Avenue • Third Floor • Coral Gables, FL 33134
Telephone: (305) 448-7089 • Facsimile: (305) 446-6191

CASE NO. _____

of Plaintiffs when, in fact, they are buying substandard Counterfeit Merchandise and unredeemable Counterfeit Tickets. When the merchandise prematurely breaks, tears, shrinks, or fades and when the tickets fail to grant entry into the Super Bowl game, consumers lose the value of their hard-earned money and question the goodwill of Plaintiffs. These counterfeit products also infringe upon and dilute the value of Plaintiffs' trademarks.

6.      Plaintiffs have expended significant resources to investigate and stop this counterfeiting, to prevent the public from being deceived, and to protect Plaintiffs' reputation for high quality products—immediately recognized by the public through Plaintiffs' famous trademarks.

7.      The Defendants' sale and distribution of unlicensed Counterfeit Merchandise and Counterfeit Tickets, which bear imitations of Plaintiffs' registered trademarks, are direct violations of Federal and Florida trademark and unfair competition laws, and Plaintiffs' rights under those laws. Accordingly, Plaintiffs seek a temporary restraining order, seizure order, and preliminary and permanent injunctive relief to stop Defendants' continued deception of the public and the irreparable injury to Plaintiffs arising from Defendants' sale and distribution of Counterfeit Merchandise and Counterfeit Tickets.  Plaintiffs are seeking the temporary restraining order and seizure order on an *ex parte* basis because, as explained in Plaintiffs' contemporaneously filed briefs and supporting affidavits, proceeding on notice would render such relief meaningless because Defendants easily would circumvent the orders.

CASE NO. _____

## PARTIES

8.     Plaintiff NFL Properties LLC ("NFLP") is a limited liability company, organized and existing under the laws of the State of Delaware, with offices at 345 Park Avenue, New York, New York.  NFLP owns all of the NFL's trademarks, names, logos, symbols, slogans, designs, and other identifying marks and indicia (both registered and unregistered) and is responsible for licensing and protecting the same. Additionally, NFLP is the authorized representative of the NFL's thirty-two Member Clubs with respect to the licensing and protection of their trademarks, names, logos, symbols, slogans, designs, and other identifying marks and indicia. The trademarks, names, logos, symbols, slogans, uniform designs, and other identifying marks and indicia relating to the activities of, adopted by, and used in commerce by the NFL and its Member Clubs, including the 49ers Club and the Chiefs Club, are collectively referred to herein as the "NFL Trademarks."

9.     Plaintiff Forty Niners Football Company LLC (the "49ers Club") is a Delaware limited liability company, with its principal place of business in Santa Clara, California. Plaintiff Forty Niners Football Company LLC owns and operates a professional football team known as the San Francisco 49ers.

10.     Plaintiff Kansas City Chiefs Football Club, Inc. (the "Chiefs Club") is a Texas corporation, with its principal place of business in Kansas City, Missouri. Plaintiff Kansas City Chiefs Football Club, Inc. owns and operates a professional football team known as the Kansas City Chiefs.

11.     The NFL is an unincorporated association of the Member Clubs—each of which owns and operates a professional football team—engaged in providing entertainment services to the public in the form of competitive professional football games. The Member Clubs are divided

CASE NO. _____

into two conferences: the National Football Conference ("NFC") and the American Football Conference ("AFC"). The 49ers Club is the current champion of the NFC and the Chiefs Club is the current champion of the AFC. The 49ers Club and the Chiefs Club will compete for the NFL championship in Super Bowl LIV, which will be played at the Hard Rock Stadium in Miami Gardens, Florida on Sunday, February 2, 2020.

  12. Plaintiffs are informed and believe, and on that basis allege, that Defendants are corporations, partnerships, proprietorships, unincorporated associations, and individuals whose identities and addresses are presently unknown to Plaintiffs and are not presently capable of ascertainment. Plaintiffs are informed and believe, and on that basis allege, that Defendants will be in Miami-Dade County, Florida, as well as in Broward, Palm Beach, Monroe, and St. Lucie Counties (collectively, the "South Florida Counties"), leading up to, on the day of the Super Bowl LIV game, and immediately thereafter for the purpose of producing, advertising, offering for sale, distributing, or selling Counterfeit Merchandise and Counterfeit Tickets in violation of the rights of Plaintiffs, as more fully alleged herein. Accordingly, Defendants are or will be subject to the jurisdiction and venue of this Court.

## JURISDICTION AND VENUE

  13. This is an action for trademark counterfeiting and trademark infringement, trademark dilution, and unfair competition and false designation of origin arising under the Trademark Act of 1946, 15 U.S.C. §§ 1051, et seq., as amended by the Trademark Counterfeiting Act of 1984, Public Law 98-473 (October 12, 1984), and the Prioritizing Resources and Organization for Intellectual Property Act of 2007, H.R. 4279 (October 13, 2008) (the "Lanham Act"), and for unlawful and deceptive acts and practices under the laws of the State of Florida.

**LOTT & FISCHER, PL** • 255 Aragon Avenue • Third Floor • Coral Gables, FL  33134
Telephone: (305) 448-7089 • Facsimile: (305) 446-6191

CASE NO. _____

14.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§

1331, 1332(a), and 1338(a) and (b); and 15 U.S.C. §§ 1116 and 1121.  This Court has jurisdiction,

pursuant to the principles of supplemental jurisdiction and 28 U.S.C. § 1367, over Plaintiffs' claims

arising under the laws of the State of Florida.

15.     This Court has personal jurisdiction over Defendants in whole or in part arising out

of Defendants (a) transacting business within the State of Florida; (b) moving counterfeit goods in

interstate commerce; (c) committing tortious acts in the State of Florida; and (d) injuring Plaintiffs

and the public in the South Florida Counties through acts committed in and outside the South

Florida Counties.  Accordingly, this Court has personal jurisdiction over Defendants pursuant to

Fla. Stat. §§ 48.193(1)(a), and 48.193(2).

16.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400(a) in that

the Defendants are entities or individuals subject to personal jurisdiction in this district.  Further,

venue is appropriate because a substantial portion of the acts complained of herein were committed

by Defendants within this district.

## FACTS

### The NFL, the Member Clubs, and the NFL Trademarks

17.     NFL football is and for many years has been the most popular professional sport in

the United States. Millions of people attend the games each year and millions more follow the NFL

teams and games through electronic and print media, and also access and download information

and images related to the games via the internet and social media. To identify and distinguish their

respective football teams and the entertainment services that they provide, the Member Clubs—

including the 49ers Club and the Chiefs Club—have adopted and used in commerce certain

trademarks, symbols, slogans, logos, helmet and uniform designs, emblems, official team colors, and other identifying marks.

18.     Plaintiff NFLP is the owner of, has adopted, and has used in commerce numerous trademarks for a wide variety of products related to the NFL's goods and services, and has registered with the United States Patent and Trademark Office ("USPTO") and/or with the Florida Secretary of State's Office certain of those trademarks, all of which are included in the NFL Trademarks.  The marks adopted, used in commerce, and/or registered by the NFLP include, but are not limited to, the following: NATIONAL FOOTBALL LEAGUE, NFL, SUPER BOWL, LIV, SUPER SUNDAY, AMERICAN FOOTBALL CONFERENCE, AFC, NATIONAL FOOTBALL CONFERENCE, NFC, VINCE LOMBARDI TROPHY, NFL EXPERIENCE, BACK TO FOOTBALL, NFL NETWORK, NFL ON LOCATION, NFL SHOP, NFL TICKET EXCHANGE, ON FIELD, PRO BOWL, SUNDAY NIGHT FOOTBALL, MONDAY NIGHT FOOTBALL, THURSDAY NIGHT FOOTBALL, the NFL 100 Design, the Super Bowl LIV Design, the NFL Shield Design (including current and prior versions), the AFC Design (including current and prior versions), the NFC Design (including current and prior versions), the BACK TO FOOTBALL Design, the NFL NETWORK Design, the AFC Champion Trophy Design, the NFC Champion Trophy Design, and the Vince Lombardi Trophy Design, among others. True and correct copies of the Certificates of Registration for the marks registered with the Florida Secretary of State's Office and/or registered with the USPTO are attached collectively as Exhibit 1 and are incorporated by reference herein as if set forth in full.

19.     The 49ers Club is the owner of, and has adopted and used in commerce numerous trademarks in connection with its goods and services, and has registered certain of those marks

CASE NO. _____

with the USPTO, all of which are included in the NFL Trademarks.  The marks adopted, used in commerce, and/or registered by the 49ers Club, include, but are not limited to the following: SAN FRANCISCO 49ERS, SAN FRANCISCO FORTY NINERS, 49ERS, NINERS, FAITHFUL, FAITHFUL FLAG, SF Designs, the 49ers Design, the 49ers helmet design, and the 49ers home, away, alternate, and/or historic uniform and jersey designs. True and correct copies of the Certificates of Registration for the marks registered by the 49ers Club with the USPTO are attached collectively as Exhibit 2 and are incorporated by reference herein as if set forth in full.

20.     The Chiefs Club is the owner of, and has adopted and used in commerce numerous trademarks in connection with its goods and services, and has registered certain of those marks with the USPTO, all of which are included in the NFL Trademarks.  The marks adopted, used in commerce, and/or registered by the Chiefs Club, include, but are not limited to the following: KANSAS CITY CHIEFS, CHIEFS, CHIEFS KINGDOM, ARROWHEAD, the Arrowhead Designs, CHIEFS (stylized), the Kansas City Chiefs and Arrowhead Design, ARROWHEAD (stylized), the Chiefs helmet design, the Chiefs home and away uniform and jersey designs  and the KC Wolf Mascot Design. True and correct copies of the Certificates of Registration for the marks registered by the Chiefs Club with the USPTO are attached collectively as Exhibit 3 and are incorporated by reference herein as if set forth in full.

21.     The NFL Trademarks are extremely well-known to the public because of the great popularity of NFL football, the extensive media coverage of the NFL and the Member Clubs, including the 49ers Club and the Chiefs Club, and the continuous and extensive use of the NFL Trademarks in promotional and advertising programs, and on a wide variety of products and services. The NFL Trademarks are distinctive and have also achieved secondary meaning to the

CASE NO. _____

public: they identify the products upon which they appear as sourced or sponsored by the NFL and the Member Clubs.

### The Business of NFLP

22.     Plaintiff NFLP has entered into numerous licensing agreements with third parties, whereby it has licensed those parties to use the NFL Trademarks in connection with the manufacture and sale of articles of merchandise, including apparel and accessories, hats, pennants, novelty items, games and many other products. NFLP controls and monitors the quality and designs of that merchandise on behalf of the Member Clubs and the NFL. Photographs of the numerous articles of merchandise licensed by NFLP appear on retail sites, including the NFL's official eCommerce outlet, and the official eCommerce shops of the 49ers Club and the Chiefs Club. Licensed merchandise is widely available in South Florida Counties, as well as elsewhere in the State of Florida, and throughout the United States. As a result of the great popularity of NFL football and the widespread public recognition of the NFL Trademarks, the NFL Trademarks are extremely valuable commercial assets and embody goodwill of incalculable value. Representative examples of licensed merchandise bearing the NFL Trademarks are attached as Exhibit 4.

23.     NFLP's licensees have invested significant amounts of capital and time into the production, marketing, and promotion of their products bearing the NFL Trademarks and have established significant consumer demand for these items through such efforts. Consumers readily identify merchandise bearing the NFL Trademarks as being sponsored or approved by the NFL and the Member Clubs. Thus, to preserve and protect the goodwill inherent in the NFL Trademarks, NFLP reviews and pre-approves the design of all merchandise produced and sold by its licensees.

CASE NO. _____

24.     Additionally, Plaintiff NFLP has a trademark protection program that serves to protect its fans and licensees, as well as preserve and protect the goodwill inherent in the NFL Trademarks. All NFLP licensees are required to affix an NFL security label to their NFL products or product packaging. The NFL security label, or "hologram" tag, is the essential element of NFL product authentication and is securely distributed through a third-party security company to the NFLP licensees. The NFL security labels are produced in both a one-inch and one-centimeter size and based on the item size are applied either to the product or product packaging. All NFL security labels contain a variety of covert and overt security features that enable NFLP quickly and confidently to identify authentic NFL merchandise.

25.     NFLP's licensees manufacture merchandise bearing the NFL Trademarks. Various retail outlets throughout the United States, including throughout the State of Florida and in the South Florida Counties, purchase the licensed merchandise because of the NFL Trademarks' indication of quality and of sponsorship by the NFL and the Member Clubs.

26.     As the owner of the trademark registrations related to the NFL's activities and as the authorized licensing agent for the thirty-two Member Clubs' trademarks—including the 49ers Club and the Chiefs Club—NFLP licenses the use of the NFL Trademarks on tickets that allow fans entry into NFL games, including the Super Bowl games. Consumers believe that tickets bearing NFL Trademarks are authorized by NFLP and its Member Clubs and that the tickets will be honored when presented for entry into NFL games.

27.     To protect NFL fans, Plaintiff NFLP has implemented a number of overt and covert security features on tickets that allow fans entry into the Super Bowl games. For example, every Super Bowl ticket has a true color security label applied to the back of the ticket, redesigned every

CASE NO. _____

year with covert security measures. Additionally, each Super Bowl ticket contains overt and covert

security features such as thermochromic ink, as well as other measures incorporated into the ticket

design, all of which enable NFLP to quickly and confidently identify authentic NFL Super Bowl

tickets.

28.     For numerous years, Plaintiff NFLP has consistently worked with local and federal

law enforcement officers and agents to protect the public and NFL fans from the sale of Counterfeit

Merchandise and Counterfeit Tickets. These security features facilitate quick and confident

identification of authentic NFL merchandise and Super Bowl game tickets.

### NFLP'S Trademark Protection Program

29.     To protect the NFL Trademarks from infringement, dilution, disparagement, and

misappropriation, Plaintiff NFLP has established a program of trademark protection. NFLP, its

brand protection investigators, and other representatives investigate instances of unauthorized use

of the NFL Trademarks by third parties. When appropriate, counsel contacts such third parties

with a request to cease and desist unauthorized use of the NFL Trademarks.

30.     Plaintiff NFLP annually handles hundreds of instances of unauthorized use of the

NFL Trademarks. Infringers often voluntarily agree to cease further sales of the unlicensed

merchandise. On other occasions, NFLP has obtained injunctive relief against the sale of

Counterfeit Merchandise and/or Counterfeit Tickets in a number of federal and state courts. *See,*

*e.g.*, *NFL Properties LLC, et al. v. Does 1 through 100, inclusive*, No. 3:16-cv-00474 (N.D. Cal.

2016); *Nat'l Football League, et al. v. Sunmei*, No. 13-CV-2572 (LGS) (S.D.N.Y. Jan. 5, 2015);

*Nat'l Football League, et al. v. Ming*, No. 14-CV-3377 (LTS) (S.D.N.Y. Aug. 18, 2014); *Nat'l*

*Football League, et al. v. Zhu*, No. 13-CV-5416 (S.D.N.Y. Aug. 2, 2013); *Nat'l Football League,*

CASE NO. _____

*et al. v. Lee*, No. 11-Civ-8911 (KPC) (S.D.N.Y. Dec. 14, 2011); *Nat'l Football League, et al. v. Cheng*, No. 11-Civ-0344 (WHP) (S.D.N.Y. Mar. 24, 2011); *NFL Properties LLC, et al. v. Does 1 through 200, inclusive*, No. 2019-CV-315769 (Ga. Sup. Ct. Fulton Co. 2019); *NFL Properties LLC, et al. v. Does 1 through 100, inclusive*, No. 27-CV-18-1260 (Minn. Dist. Ct., Hennepin Co. 2018); *NFL Properties LLC, et al. v. Does 1 through 100, inclusive*, No. 2017-04658 (Texas Dist. Ct., Harris Co. 2017); *NFL Properties LLC, et al. v. Does 1 through 100, inclusive*, No. 10-05111 CA 11 (Fla. Cir. Ct. Miami-Dade Co. 2010); *NFL Properties LLC, et al. v. Does 1 through 150, inclusive*, No. 07-02181 CA 11 (Fla. Cir. Ct. Miami-Dade Co. 2007); *NBA Props., Inc., et al. v. Zhang Ledong, et al.,* No. 19-cv-08322 (N.D. Ill. Jan. 7, 2020); *NBA Props., Inc., et al. v. Xu Lilian, et al.,* No. 19-cv-06775 (N.D. Ill. Nov. 20, 2019); *NBA Props., Inc., et al. v. Yu Zicheng, et al.,* No. 19-cv-04412 (N.D. Ill. Oct. 8, 2019); *NBA Props., Inc., et al. v. Yanfahui, et al.,* No. 19-cv-01796 (N.D. Ill. June 20, 2019); *NBA Props., Inc., et al. v. NBA-CheapJerseys.com Registrant, et al.,* No. 19-cv-01731 (N.D. Ill. May 1, 2019).

### The Super Bowl Game and NFLP's Super Bowl Trademark Licensing Program

31.     The Super Bowl game is one of the most popular sporting events of all time. The game annually attracts a television audience of more than 100 million viewers in the United States alone. Intense media attention is focused on the game and the two participating teams during the period leading up to the game. This year, in anticipation of the Super Bowl LIV game, fans are accessing and downloading information and images related to the Super Bowl, the NFL, the 49ers Club, and the Chiefs Club via the Internet at the official websites of the NFL (www.nfl.com and www.superbowl.com). In all respects, the Super Bowl game is the culmination of the NFL season and showcases the activities of the NFL and the Member Clubs, particularly the game participants.

CASE NO. _____

32.     Plaintiff NFLP has issued national licenses to nearly 200 companies for use of the

NFL Trademarks on a wide variety of goods, including apparel such as t-shirts, garments, hats,

souvenir items, novelty items, and games, among many other products. Licensed merchandise is

widely available in brick and mortar stores throughout the United States—including in South

Florida Counties and elsewhere in the State of Florida—and on online websites such as

www.nflshop.com, the NFL's official eCommerce outlet, and the official eCommerce shops of the

49ers Club and the Chiefs Club.

33.     Additionally, Plaintiff NFLP annually develops and licenses specific, unique Super

Bowl graphic design logos for use in connection with the production and sale of licensed

merchandise relating to the Super Bowl game. A representative image of the Super Bowl LIV

design logo appears below:



34.     NFLP has licensed approximately 160 companies to produce high quality

merchandise specifically relating to the Super Bowl LIV game, including apparel and accessories,

as well as souvenir items, novelty items, and games, among many other products.

35.     The cornerstone of NFLP's trademark licensing program is the promotion of an

image of quality for the Member Clubs and the NFL. Only companies that meet high standards of

quality, performance, and reliability receive a license to use or sell products bearing the NFL

CASE NO. _____

Trademarks. Association of the NFL Trademarks with products or services of less than the highest quality reflects adversely on the NFL and the Member Clubs and inhibits their ability to compete in the highly competitive market for sports and entertainment products and services.

### NFLP's Previous Seizure Orders

36.     The great popularity of the Super Bowl game and the strong public interest in the game itself and the participating teams annually generate the production and sale of substantial quantities of Counterfeit Merchandise and Counterfeit Tickets bearing spurious replications of the NFL Trademarks.

37.     The Counterfeit Merchandise and Counterfeit Tickets are generally produced by professional counterfeiters for distribution through large networks of itinerant resellers looking to maximize their profits as quickly as possible before leaving town without a trace. The counterfeiters and resellers typically use fake names and business addresses to avoid detection as the source of Counterfeit Merchandise and Counterfeit Tickets.

38.     To combat this problem, prior to each Super Bowl game for the last thirty-seven (37) years beginning with Super Bowl XVII in Pasadena, California in 1983, NFLP has obtained *ex parte* seizure orders in federal and state courts, granting NFL brand protection investigators the ability to seize and impound Counterfeit Merchandise and Counterfeit Tickets. Plaintiffs received such an order from various federal and state courts, including state courts in Miami-Dade County when Super Bowl XLIV was played in South Florida in 2010 and when Super Bowl XLI was played in South Florida in 2007. Copies of those orders are attached as Exhibits 5 and 6, respectively.

CASE NO. _____

39.     These orders have enabled NFLP to diminish the sale of Counterfeit Merchandise and Counterfeit Tickets, thereby protecting the goodwill and reputation of the NFL, the competing teams, and their respective trademarks. Moreover, NFLP has never been required to draw on any security bond posted in connection with the execution of a Super Bowl seizure order.

## Sales of Counterfeit Merchandise and Counterfeit Tickets

40.     In addition to counterfeit merchandise seized during last year's Super Bowl events in Atlanta, nearly 100 counterfeit tickets were also confiscated by the NFL at Mercedes-Benz Stadium in Atlanta.   Furthermore, recent investigations by law enforcement authorities and investigative representatives of NFLP have revealed intentional, knowing, wanton and reckless production, distribution, offering for sale, and sale of significant quantities of Counterfeit Merchandise by Defendants by and through vendors at the playoff and conference championship games, who have indicated that they intend to continue to sell Counterfeit Merchandise. Photographs of representative samples of Counterfeit Merchandise offered for sale during this year's playoff season are attached as Exhibit 7.

41.     The unauthorized sale of such Counterfeit Merchandise and Counterfeit Tickets by Defendants is likely to cause confusion to the public, to cause mistake, and to deceive, in that the members of the public attending the Super Bowl game or otherwise purchasing Counterfeit Merchandise and Counterfeit Tickets will believe that they are licensed by, sponsored by, approved by, or affiliated with the NFL, NFLP, the 49ers Club, and the Chiefs Club, when they are not. Sales of Counterfeit Merchandise and Counterfeit Tickets injure the business of NFLP by interfering with the sales of merchandise by NFLP's licensees and legitimate retailers and by

CASE NO. _____

placing the goodwill of the NFL, the 49ers Club, and the Chiefs Club in the hands of parties over whom NFLP, the 49ers Club, and the Chiefs Club have no control.

42.     The unauthorized sale of Counterfeit Merchandise and Counterfeit Tickets also damages the goodwill of the NFL and the Member Clubs that is embodied in the NFL Trademarks. Indeed, because the Super Bowl game is the NFL's showcase event, the sale of inferior quality Counterfeit Merchandise and unredeemable Counterfeit Tickets will cause immediate and irreparable damage to the goodwill and reputation of Plaintiffs.

43.     Counterfeit Merchandise and Counterfeit Tickets are produced by professional infringers who concentrate on large-scale, short-term events, such as sporting events. These professional infringers recognize the illegality of their conduct and thwart NFLP's investigative efforts by concealing their identities, using middlemen, or transferring the merchandise upon detection. NFLP's previous trademark protection efforts during the Super Bowl game period demonstrate that the professional infringers who "work" the site of the Super Bowl game will defy or avoid temporary restraining orders and will continue to sell their Counterfeit Merchandise and Counterfeit Tickets in any possible manner. The only effective way to combat this problem is to seize the goods at or before the point of sale.

44.     Because the counterfeiters at the Super Bowl game are aware of the illegality of their conduct, they often act in concert with or through anonymous distributors so that it is extremely difficult, if not impossible, to identify the source of any given counterfeit merchandise that is sold in a retail store, at a street stand, or out of portable containers. The counterfeiters often lack a definite or permanent business identity and may not be located or served with process in conventional fashion. Thus, notice to the producers and vendors of the Counterfeit Merchandise

and Counterfeit Tickets that will be sold in the South Florida Counties is impractical and fruitless. Once word spreads that legal action may be taken against infringers, merchandise will be concealed or transferred, rendering it extremely unlikely that Plaintiffs will be able to obtain evidence to secure any meaningful relief or that the merchandise will ever be kept out of channels of distribution.

45.     Defendants' activities have caused and will continue to cause Plaintiffs grave and irreparable harm. Unless restrained and enjoined and unless their Counterfeit Merchandise and Counterfeit Tickets are seized by this Court without notice, Defendants will persist in their activities and conceal or destroy evidence, causing Plaintiffs further irreparable harm before any Defendant can be heard in opposition.

46.     Because the acts of Defendants will continue in the future unless restrained, Plaintiffs have no adequate remedy at law.

47.     Defendants' actions constitute willful misconduct, malice, fraud, wantonness, oppression, and/or the entire want of care, which raises the presumption of conscious indifference to consequences.

CASE NO. _____

## CAUSES OF ACTION

### COUNT I
### (Federal Trademark Counterfeiting - 15 U.S.C. §§ 1114-1117)

48.   Plaintiffs repeat and reallege the allegations set forth above in paragraphs 1-47 as if fully set forth herein.

49.   The NFL Trademarks and the goodwill of the businesses associated with them in the United States are of great and incalculable value, are highly distinctive, and have become universally associated in the public mind with (i) authentic merchandise upon which the NFL Trademarks appear; and (ii) the related NFL services of the highest quality and reputation.

50.   Without the Plaintiffs' authorization or consent, and with knowledge of the Plaintiffs' well-known prior rights in the NFL Trademarks and that Defendants' Counterfeit Merchandise and Counterfeit Tickets bear marks which are intentionally identical to, or imitations of, the NFL Trademarks, Defendants have reproduced, counterfeited, copied, and sold Counterfeit Merchandise and Counterfeit Tickets to the consuming public of the United States in direct competition with Plaintiffs' sale of genuine merchandise and tickets, in or affecting interstate commerce.

51.   Defendants have counterfeited and infringed the NFL Trademarks.  Defendants' use of the NFL Trademarks is without Plaintiffs' authorization or consent.

52.   Defendants' use of copies or simulations of the NFL Trademarks on Counterfeit Merchandise and Counterfeit Tickets is likely to cause and is causing confusion, mistake, and deception among the general purchasing public as to the origin of the Counterfeit Merchandise and Counterfeit Tickets, and is likely to deceive the public into believing the Counterfeit

LOTT & FISCHER, PL • 255 Aragon Avenue • Third Floor • Coral Gables, FL  33134
Telephone: (305) 448-7089 • Facsimile: (305) 446-6191

CASE NO. _____

Merchandise and Counterfeit Tickets originate from, are associated with, or are otherwise authorized by Plaintiffs, all to the damage and detriment of the Plaintiffs' reputations, goodwill, and sales.  Accordingly, Defendants are using reproductions, counterfeits, and copies of the federally registered NFL Trademarks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

53.     Defendants' conduct exploits the goodwill and reputation associated with Plaintiffs and Plaintiffs' registered NFL Trademarks.

54.     Plaintiffs have no control over the quality of Defendants' Counterfeit Merchandise and cannot honor Defendants' Counterfeit Tickets.  Because of the very real likelihood of confusion as to the source of Defendants' Counterfeit Merchandise and Counterfeit Tickets, Plaintiffs' reputation and valuable goodwill in their trademarks are irreparably harmed by Defendants' unscrupulous tactics.

55.     Defendants' unauthorized use of the NFL Trademarks as set forth above has resulted, and will continue to result, in Defendants unfairly benefitting from Plaintiffs' advertising and promotion, and profiting from Plaintiffs' reputation and their registered NFL Trademarks, to the substantial and irreparable injury of the public, Plaintiffs, the NFL Trademarks, and the substantial goodwill represented thereby.

56.     Defendants' acts demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the NFL Trademarks to Plaintiffs' great and irreparable injury.

57.     Defendants' acts have caused and will continue to cause the Plaintiffs great and irreparable harm.

**LOTT & FISCHER, PL** • 255 Aragon Avenue • Third Floor • Coral Gables, FL  33134
Telephone: (305) 448-7089 • Facsimile: (305) 446-6191

CASE NO. _____

58.    Unless restrained and enjoined by this Court, Defendants will persist in their activities, thereby causing Plaintiffs irreparable harm.

59.    Plaintiffs have no adequate remedy at law.

60.    Plaintiffs are, therefore, entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

61.    For each act of infringement, Plaintiffs are entitled to recover Defendants' profits pursuant to 15 U.S.C. § 1117(a).

62.    Defendants' acts of counterfeiting as alleged herein have been undertaken with knowledge of Plaintiffs' exclusive rights to the NFL Trademarks, entitling Plaintiffs to an award of treble Defendants' profits, plus attorneys' fees in bringing and maintaining this action, pursuant to 15 U.S.C. § 1117(b), or alternatively statutory damages pursuant to 15 U.S.C. § 1117(c).

## COUNT II
### (Federal Trademark Infringement - 15 U.S.C. § 1114)

63.    Plaintiffs repeat and reallege the allegations set forth above in paragraphs 1-47 as if fully set forth herein.

64.    The NFL Trademarks are highly distinctive, of incalculable value, and universally associated in the public mind with the authentic merchandise upon which the NFL Trademarks appear and the related services of highest quality and reputation.

65.    Defendants' unauthorized use of the NFL Trademarks on inferior quality merchandise and unredeemable tickets in interstate commerce and advertising relating to the same constitutes false designation of origin and false representation that the goods and services are manufactured, offered, sponsored, authorized, licensed by, or otherwise connected with Plaintiffs.

CASE NO. _____

66.     The use by Defendants of the NFL Trademarks without Plaintiffs' consent or authorization in connection with Defendants' Counterfeit Merchandise and Counterfeit Tickets is likely to cause confusion, mistake, or deception of consumers as to the source of origin or sponsorship of the products in violation of 15 U.S.C. § 1114.

67.     Defendants' aforementioned acts constitute trademark infringement in violation of 15 U.S.C. § 1114.

68.     Plaintiffs are informed and believe and thereupon allege that Defendants' acts are intentional and intended to confuse the public as to the source of Defendants' Counterfeit Merchandise and Counterfeit Tickets and to injure Plaintiffs and reap the benefit of Plaintiffs' goodwill associated with Plaintiffs' trademarks.

69.     As a direct and proximate result of Defendants' willful and unlawful conduct, Plaintiffs have been irreparably injured and will continue to suffer irreparable injury unless Defendants' infringing actions are enjoined by this Court.

70.     Plaintiffs have no adequate remedy at law.

71.     Plaintiffs are, therefore, entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

72.     For each act of infringement, Plaintiffs are entitled to recover Defendants' profits pursuant to 15 U.S.C. § 1117(a).

73.     Defendants' acts of infringement as alleged herein have been undertaken with knowledge of Plaintiffs' exclusive rights to the NFL Trademarks, entitling Plaintiffs to an award of treble Defendants' profits, plus attorneys' fees in bringing and maintaining this action, pursuant to 15 U.S.C. § 1117(b), or alternatively statutory damages pursuant to 15 U.S.C. § 1117(c).

CASE NO. _____

## COUNT III
### (Federal Unfair Competition and False Designation of Origin - 15 U.S.C. § 1125(a))

74.     Plaintiffs repeat and reallege the allegations set forth above in paragraphs 1-47 as if fully set forth herein.

75.     Defendants' creation, production, offering for sale, advertisement, and/or distribution of Defendants' Counterfeit Merchandise and Counterfeit Tickets, which use the NFL Trademarks and Plaintiffs' trade names, have been and are without Plaintiffs' permission or consent, and constitute designation of a term, symbol, device, or any combination thereof, that is false or misleading within the meaning of 15 U.S.C. § 1125(a).

76.     Defendants' knowing use of reproductions or confusingly similar imitations of the NFL Trademarks in connection with the Counterfeit Merchandise and Counterfeit Tickets is causing and will continue to cause confusion, deception, and mistake among the general purchasing public of the United States by creating the false and misleading impression that Defendants' goods are manufactured or distributed by Plaintiffs; or are affiliated, connected, or associated with the NFL, NFLP, and/or Member Clubs; or have the sponsorship, endorsement, or approval of Plaintiffs.

77.     By misappropriating and using the NFL Trademarks and Plaintiffs' trade names, Defendants misrepresent and falsely describe to the general public the origin and source of the Counterfeit Merchandise and Counterfeit Tickets and create a likelihood of confusion by consumers as to the source of such products.

78.     Defendants' unlawful, unauthorized, and unlicensed reproduction, counterfeiting, copying, and sale of the Counterfeit Merchandise and Counterfeit Tickets create express and implied misrepresentations that the Counterfeit Merchandise and Counterfeit Tickets were created,

**LOTT & FISCHER, PL** • 255 Aragon Avenue • Third Floor • Coral Gables, FL 33134
Telephone: (305) 448-7089 • Facsimile: (305) 446-6191

CASE NO. _____

authorized, or approved by Plaintiffs, when in fact they are not, all to Defendants' profit and to Plaintiffs' great damage and injury.

79.     Defendants' acts are in violation of 15 U.S.C. § 1125(a) in that Defendants' use of the NFL Trademarks and Plaintiffs' trade names in connection with the Counterfeit Merchandise and Counterfeit Tickets in interstate commerce constitutes a false designation of origin and unfair competition.

80.     Defendants' acts demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the NFL Trademarks to Plaintiffs' great and irreparable injury.

81.     Defendants' acts have caused and will continue to cause the Plaintiffs irreparable harm.

82.     Unless restrained and enjoined by this Court, Defendants will persist in their activities, thereby causing Plaintiffs irreparable harm.

83.     Plaintiffs have no adequate remedy at law.

84.     Plaintiffs are, therefore, entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

85.     Plaintiffs are entitled to recover Defendants' profits pursuant to 15 U.S.C. § 1117(a).

86.     Defendants' conduct as alleged herein has been willful, entitling Plaintiffs to an award of attorneys' fees pursuant to 15 U.S.C. § 1117(a).

## COUNT IV
### (Federal Trademark Dilution - 15 U.S.C. § 1125(c))

87.     Plaintiffs repeat and reallege the allegations set forth above in paragraphs 1-47 as if fully set forth herein.

**LOTT & FISCHER, PL** • 255 Aragon Avenue • Third Floor • Coral Gables, FL 33134
Telephone: (305) 448-7089 • Facsimile: (305) 446-6191

CASE NO. _____

88.     The NFL Trademarks are famous within the meaning of the Trademark Dilution Revision Act of 2006 because, among other things:  (1) the NFL Trademarks are highly distinctive; (2) Plaintiffs have used the NFL Trademarks continuously for decades throughout the United States to promote Plaintiffs' goods and services; (3) Plaintiffs and their authorized licensees have advertised and publicized the NFL Trademarks for decades throughout the United States; (4) the NFL Trademarks are widely recognized by the general consuming public of the United States; and (5) many of the NFL Trademarks are the subject of valid and subsisting registration under the Lanham Act on the Principal Register.

89.     The NFL Trademarks have become universally associated in the public mind with the authentic merchandise upon which the NFL Trademarks appear and the related NFL services of the highest quality and reputation.

90.     Defendants' unlawful, unauthorized, and unlicensed reproduction, counterfeiting, copying, and sale of the Counterfeit Merchandise and Counterfeit Tickets are likely to cause blurring, dilution, and tarnishment of the NFL Trademarks because Defendants' use of the NFL Trademarks is likely to deceive the public into believing the lower-quality Counterfeit Merchandise and the unredeemable Counterfeit Tickets originate from, are associated with, or are otherwise authorized by Plaintiffs.  This will lead consumers to believe that Plaintiffs' goods and services connected with the NFL Trademarks are of low quality.

91.     Defendants' use of the NFL Trademarks began only after such marks became famous.

92.     Defendants' acts are in violation of 15 U.S.C. § 1125(c) in that Defendants' use of the NFL Trademarks in connection with the Counterfeit Merchandise and Counterfeit Tickets in

CASE NO. _____

interstate commerce dilutes, blurs, and tarnishes the distinctiveness of the famous NFL Trademarks with consequent damage to Plaintiffs and to the substantial business and goodwill symbolized by the NFL Trademarks.

93.     Plaintiffs have been irreparably harmed and will continue to be irreparably harmed through this dilution of their trademark rights, as well as through the immediate and direct injury to their names, images, and business reputations.

94.     Defendants' acts demonstrate an intentional, willful, and malicious intent to trade on Plaintiffs' reputation and to harm the reputation of the famous NFL Trademarks, to Plaintiffs' great and irreparable injury.

95.     Unless restrained and enjoined by this Court, Defendants will persist in their activities, thereby continuing to cause Plaintiffs irreparable harm.

96.     Plaintiffs have no adequate remedy at law.

97.     Plaintiffs are therefore, entitled to injunctive relief pursuant to 15 U.S.C. §§ 1116(a) and 1125(c).

98.     Defendants' acts are exceptional within the meaning of 15 U.S.C. § 1117(a).

### COUNT V
### (Florida Trademark Infringement – Fla. Stat. Ch. 495.131)

99.     Plaintiffs repeat and reallege the allegations set forth above in paragraphs 1-47 as if fully set forth herein.

100.    The NFL Trademarks are highly distinctive, of incalculable value, and universally associated in the public mind with the authentic merchandise upon which the NFL Trademarks appear and the related services of highest quality and reputation.

LOTT & FISCHER, PL • 255 Aragon Avenue • Third Floor • Coral Gables, FL  33134
Telephone: (305) 448-7089 • Facsimile: (305) 446-6191

CASE NO. _____

101.    Defendants' unauthorized use of the NFL Trademarks on inferior quality merchandise and unredeemable tickets in Florida and advertising relating to the same constitutes false designation of origin and false representation that the goods and services are manufactured, offered, sponsored, authorized, licensed by, or otherwise connected with Plaintiffs.

102.    The use by Defendants of the NFL Trademarks without Plaintiffs' consent or authorization in connection with Defendants' Counterfeit Merchandise and Counterfeit Tickets is likely to cause confusion, mistake, or deception of consumers as to the source of origin or sponsorship of the products in violation of Fla. Stat. Ch. 495.131.

103.    Defendants' aforementioned acts constitute trademark infringement in violation of Fla. Stat. Ch. 495.131.

104.    Plaintiffs are informed and believe and thereupon allege that Defendants' acts are intentional and intended to confuse the public as to the source of Defendants' Counterfeit Merchandise and Counterfeit Tickets and to injure Plaintiffs and reap the benefit of Plaintiffs' goodwill associated with Plaintiffs' trademarks.

105.    As a direct and proximate result of Defendants' willful and unlawful conduct, Plaintiffs have been irreparably injured and will continue to suffer irreparable injury unless Defendants' infringing actions are enjoined by this Court.

106.    Plaintiffs have no adequate remedy at law.

107.    Plaintiffs are, therefore, entitled to injunctive relief pursuant to Fla. Stat. Ch. 495.141.

108.    For each act of infringement, Plaintiffs are entitled to recover Defendants' profits pursuant to Fla. Stat. Ch. 495.141.

CASE NO. _____

109.    Defendants' acts of infringement as alleged herein have been undertaken with knowledge of Plaintiffs' exclusive rights to the NFL Trademarks, entitling Plaintiffs to an award of treble Defendants' profits, plus attorneys' fees in bringing and maintaining this action, pursuant to Fla. Stat. Ch. 495.141.

## COUNT VI
### (Florida Trademark Dilution - Fla. Stat. Ch. 495.151)

110.    Plaintiffs repeat and reallege the allegations set forth above in paragraphs 1-47 as if fully set forth herein.

111.    The NFL Trademarks are famous within the meaning of Fla. Stat. Ch. 495.151 because, among other things:  (1) the NFL Trademarks are highly distinctive; (2) Plaintiffs have used the NFL Trademarks continuously for decades throughout the United States, including in Florida, to promote Plaintiffs' goods and services; (3) Plaintiffs and their authorized licensees have advertised and publicized the NFL Trademarks for decades throughout the United States, including in Florida; (4) the NFL Trademarks are widely recognized by the general consuming public of the United States, including in Florida; and (5) many of the NFL Trademarks are the subject of valid and subsisting registration in the State of Florida and/or under the Lanham Act on the Principal Register.

112.    The NFL Trademarks have become universally associated in the public mind with the authentic merchandise upon which the NFL Trademarks appear and the related NFL services of the highest quality and reputation.

113.    Defendants' unlawful, unauthorized, and unlicensed reproduction, counterfeiting, copying, and sale of the Counterfeit Merchandise and Counterfeit Tickets are likely to cause

**LOTT & FISCHER, PL** • 255 Aragon Avenue • Third Floor • Coral Gables, FL  33134
Telephone: (305) 448-7089 • Facsimile: (305) 446-6191

CASE NO. _____

blurring, dilution, and tarnishment of the NFL Trademarks because Defendants' use of the NFL Trademarks is likely to deceive the public into believing the lower-quality Counterfeit Merchandise and the unredeemable Counterfeit Tickets originate from, are associated with, or are otherwise authorized by Plaintiffs. This will lead consumers to believe that Plaintiffs' goods and services connected with the NFL Trademarks are of low quality.

114.   Defendants' use of the NFL Trademarks began only after such marks became famous.

115.   Defendants' acts are in violation of Fla. Stat. Ch. 495.151 in that Defendants' use of the NFL Trademarks in connection with the Counterfeit Merchandise and Counterfeit Tickets in Florida commerce dilutes, blurs, and tarnishes the distinctiveness of the famous NFL Trademarks with consequent damage to Plaintiffs and to the substantial business and goodwill symbolized by the NFL Trademarks.

116.   Plaintiffs have been irreparably harmed and will continue to be irreparably harmed through this dilution of their trademark rights, as well as through the immediate and direct injury to their names, images, and business reputations.

117.   Defendants' acts demonstrate an intentional, willful, and malicious intent to trade on Plaintiffs' reputation and to harm the reputation of the famous NFL Trademarks, to Plaintiffs' great and irreparable injury.

118.   Unless restrained and enjoined by this Court, Defendants will persist in their activities, thereby continuing to cause Plaintiffs irreparable harm.

119.   Plaintiffs have no adequate remedy at law.

**LOTT & FISCHER, PL** • 255 Aragon Avenue • Third Floor • Coral Gables, FL  33134
Telephone: (305) 448-7089 • Facsimile: (305) 446-6191

CASE NO. _____

120.    Plaintiffs are therefore, entitled to injunctive relief pursuant to Fla. Stat. Ch. 495.141 and Fla. Stat. Ch. 495.151.

121.    For each act of dilution, Plaintiffs are entitled to recover Defendants' profits pursuant to Fla. Stat. Ch. 495.141.

122.    Defendants' acts of dilution as alleged herein have been undertaken with knowledge of Plaintiffs' exclusive rights to the NFL Trademarks, entitling Plaintiffs to an award of treble Defendants' profits, plus attorneys' fees in bringing and maintaining this action, pursuant to Fla. Stat. Ch. 495.141.

**COUNT VII**
**(Florida Common Law Unfair Competition)**

123.    Plaintiffs repeat and reallege the allegations set forth above as if fully set forth herein.

124.    Plaintiffs are the owners of all right, title, and interest in and to the NFL Trademarks by virtue of their extensive licensing, manufacture and sale of products bearing such trademarks as set forth in herein.  Particularly because of their enormous sales and publicity, Plaintiffs' have acquired common law trademark rights in and to their NFL Trademarks.

125.    The Counterfeit Merchandise and Counterfeit Tickets imported, advertised, distributed, offered for sale, and sold by Defendants incorporate matter constituting replicas and imitations of Plaintiffs' common law trademarks.  Such unauthorized use by Defendants of Plaintiffs' common law trademarks constitutes trademark infringement and unfair competition, and is likely to cause confusion and mistake in the minds of the trade and the purchasing public as to the source of the products, and to cause purchasers to believe the Counterfeit Merchandise and

**LOTT & FISCHER, PL** • 255 Aragon Avenue • Third Floor • Coral Gables, FL  33134
Telephone: (305) 448-7089 • Facsimile: (305) 446-6191

CASE NO. _____

Counterfeit Tickets originate from or are affiliated with, sponsored by, or endorsed by Plaintiffs when, in fact, they are not.

126.    Defendants have willfully and intentionally misappropriated one or more of Plaintiffs' common law trademarks with the intent of causing confusion, mistake, and deception as to origin of Defendants' Counterfeit Merchandise and Counterfeit Tickets, and are deceiving the public into believing the Counterfeit Merchandise and Counterfeit Tickets originate from, are associated with, or are otherwise authorized by Plaintiffs.

127.    By such actions in infringing Plaintiffs' common law trademarks, Defendants are improperly trading upon the valuable reputation and goodwill of Plaintiffs and are impairing Plaintiffs' valuable rights in and to such common law trademarks.

128.    As such, Defendants have committed trademark infringement and unfair competition under the common law of the State of Florida.

129.    Defendants' acts demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the NFL Trademarks to Plaintiffs' great and irreparable injury.

130.    Defendants' acts have caused and will continue to cause the Plaintiffs irreparable harm.

131.    Unless restrained and enjoined by this Court, Defendants will persist in their activities, thereby causing irreparable harm to Plaintiffs' rights in and to their trademarks, and to Plaintiffs' businesses, reputations, and goodwill.

132.    Plaintiffs have no adequate remedy at law.

133.    Defendants' acts demonstrate an oppressive, fraudulent, malicious, and conscious disregard of Plaintiffs' rights, and Plaintiffs therefore are entitled to exemplary and punitive

**LOTT & FISCHER, PL** • 255 Aragon Avenue • Third Floor • Coral Gables, FL  33134
Telephone: (305) 448-7089 • Facsimile: (305) 446-6191

CASE NO. _____

damages pursuant to the common law of the State of Florida in an amount sufficient to punish, deter, and make an example of Defendants.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs NFL Properties LLC, the Forty Niners Football Company LLC, and the Kansas City Chiefs Football Club, Inc. request a temporary restraining order, preliminary and permanent injunction, an order for seizure, damages, Defendants' profits, and other appropriate relief, as follows:

A.      That all Defendants served herein as John Does 1 through 200, inclusive, or John Doe Companies 1 through 100, inclusive, and their respective officers, directors, agents, partners, employees, attorneys, representatives, successors, and assigns, and all other persons in active concert or participation with them, or any of them, be temporarily and preliminarily restrained, and, upon final trial, permanently enjoined:

1.      from producing, manufacturing, advertising, promoting, displaying for sale, offering for sale, selling, or distributing any articles of merchandise or tickets bearing the NFL Trademarks, including but not limited to: NATIONAL FOOTBALL LEAGUE, NFL, SUPER BOWL, LIV, SUPER SUNDAY, AMERICAN FOOTBALL CONFERENCE, AFC, NATIONAL FOOTBALL CONFERENCE, NFC, VINCE LOMBARDI TROPHY, NFL EXPERIENCE, BACK TO FOOTBALL, NFL NETWORK, NFL ON LOCATION, NFL SHOP, NFL TICKET EXCHANGE, ON FIELD, PRO BOWL, SUNDAY NIGHT FOOTBALL, MONDAY NIGHT FOOTBALL, THURSDAY NIGHT FOOTBALL, the NFL 100 Design, the Super Bowl LIV Design, the NFL Shield Design (including current and prior versions), the AFC Design (including current and prior versions), the NFC Design

CASE NO. _____

(including current and prior versions), the BACK TO FOOTBALL Design, the NFL NETWORK Design, the AFC Champion Trophy Design, the NFC Champion Trophy Design, and the Vince Lombardi Trophy Design,  as depicted in Exhibit 1; the 49ers Club word and design marks, including but not limited to, SAN FRANCISCO 49ERS, SAN FRANCISCO FORTY NINERS, 49ERS, NINERS, FAITHFUL, FAITHFUL FLAG, SF Designs, the 49ers Design, the 49ers helmet design, and the 49ers home, away, alternate, and/or historic uniform and jersey designs, as depicted in Exhibit 2; the Kansas City Chiefs word and design marks, including but not limited to KANSAS CITY CHIEFS, CHIEFS, CHIEFS KINGDOM, ARROWHEAD, the Arrowhead Designs, CHIEFS (stylized), the Kansas City Chiefs and Arrowhead Design, ARROWHEAD (stylized), the Chiefs helmet design, the Chiefs home and away uniform and jersey designs and the KC Wolf Mascot Design, as depicted in Exhibit 3; the full team names, nicknames, slogans, logos, helmet or uniform designs, or other trademarks of any Member Club of the National Football League (including, but not limited to, the 49ers Club and the Chiefs Club); and any other NFL Trademarks, any colorable imitations of any of the above, or anything confusingly similar thereto, unless such merchandise or tickets have been licensed by NFLP;

2.      from making any statement or representation whatsoever or performing any act, which can or is likely to lead the trade or public, or individual members thereof, to believe that any product manufactured, distributed, or sold by Defendants is in any manner associated or connected with Plaintiffs, or is sold, manufactured, licensed, sponsored, approved, or authorized by Plaintiffs;

LOTT & FISCHER, PL • 255 Aragon Avenue • Third Floor • Coral Gables, FL  33134
Telephone: (305) 448-7089 • Facsimile: (305) 446-6191

CASE NO. _____

3.      from engaging in any activity constituting infringement of Plaintiffs' marks or any of Plaintiffs' rights in said marks or constituting any dilution of the goodwill, name, or reputation of the Plaintiffs;

4.      from otherwise competing unfairly with NFLP, the 49ers Club, and the Chiefs Club;

5.      from engaging in any activity constituting misappropriation and/or conversion of Plaintiffs' property and property rights;

6.      from erasing, deleting, altering, or destroying Defendants' Counterfeit Merchandise and Counterfeit Tickets that are in Defendants' possession or control during the pendency of this action;

7.      from destroying any documents, electronic files, or business records that pertain to the copying, reproduction, manufacture, duplication, dissemination, or distribution and/or sale by Defendants or under Defendants' authority, including any correspondence (including, but no limited to, e-mails), sales and supplier or customer journals, ledgers, invoices, purchase orders, inventory control documents, bank records, catalogues, recordings of any type whatsoever, and all other business records and documents believed to concern the manufacture, purchase, advertising, sale, or offering for sale of such infringing copies during the pendency of this action; and

8.      from effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in paragraphs (1)–(7) above.

CASE NO. _____

B.      That Plaintiffs and their duly authorized representatives, accompanied by duly-authorized law enforcement agents and officers, be empowered and directed, pursuant to the Lanham Act, 15 U.S.C. § 1116, Fla. Stat. Ch. 495.141, and the general equitable powers of the Court, and subject to appropriate restrictions and on the conditions as set forth in an order of this Court, to seize and hold in a secure place, pending further hearing, any and all Counterfeit Merchandise and Counterfeit Tickets bearing the trademarks set forth in the preceding Paragraph A of this Prayer for Relief—together with all documents or records related to such Counterfeit Merchandise and Counterfeit Tickets; any cartons, vessels, boxes, or other containers in which said Counterfeit Merchandise and Counterfeit Tickets are stored, carried, displayed, or transported; any devices used to produce or reproduce such Counterfeit Merchandise and Counterfeit Tickets, including, without limitation, silk screens, patches, molds, matrices, heat transfers, or printers; and any signs, banners, posters, displays, labels, packages, wrappings, receptacles, or advertisements intended to be used in selling, in distributing, or in connection with the sale or distribution of Counterfeit Merchandise and Counterfeit Tickets—in the possession, custody, or control of any Defendants served as John Does 1 through 200, inclusive, or John Doe Companies 1 through 100, inclusive, during a period commencing at noon on Thursday, January 30, 2020, and ending on Monday, February 3, 2020, at noon;

C.      That each and every Defendant be ordered, pursuant to pursuant to the Lanham Act, 15 U.S.C. § 1116, Fla. Stat. Ch. 495.141, and the general equitable powers of the Court, to deliver up to Plaintiffs any Counterfeit Merchandise and Counterfeit Tickets in their possession, custody, or control pursuant to the order prayed for in Paragraph B above and the sale or other disposition of which would violate the permanent injunction prayed for in Paragraph A above (together with

**LOTT & FISCHER, PL** • 255 Aragon Avenue • Third Floor • Coral Gables, FL  33134
Telephone: (305) 448-7089 • Facsimile: (305) 446-6191

CASE NO. _____

all such merchandise in the process of manufacture and any cartons, vessels, boxes, or other containers in which said Counterfeit Merchandise and Counterfeit Tickets are stored, carried, displayed, or transported; any devices used to produce or reproduce such Counterfeit Merchandise and Counterfeit Tickets, including, without limitation, patches, silk screens, molds, matrices, heat transfers, or printers; and any signs, banners, posters, displays, labels, packages, wrappings, receptacles, or advertisements intended to be used in selling, in distributing, or in connection with the sale or distribution of Counterfeit Merchandise and Counterfeit Tickets);

D.      That each and every Defendant be ordered to file with the Court, and to serve on counsel for Plaintiffs, within 30 days of the date of entry of final judgment herein, a written statement, under oath, setting forth in detail the form and manner in which each Defendant has complied with the orders herein;

E.      That Plaintiffs be permitted, subject to further order of the Court, to dispose of the seized Counterfeit Tickets by destroying them or maintaining them for the record, and dispose of the seized Counterfeit Merchandise by destroying it, donating it to charity, or making such other disposition as appears appropriate to Plaintiffs;

F.      That each and every Defendant be ordered to account for and pay over to Plaintiffs profits realized by Defendants and damages caused to Plaintiffs, by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of Plaintiffs' registered trademarks be increased by a sum not exceeding three times the amount thereof as provided by law under 15 U.S.C. § 1117 and Fla. Stat. Ch. 495.141; or, in the alternative, that Defendants be assessed statutory damages pursuant to 15 U.S.C. § 1117(c);

CASE NO. _____

G.     That Plaintiffs be awarded their reasonable attorneys' fees, costs, and such other and further relief as the Court may deem equitable, including, but not limited to, any relief set forth under 15 U.S.C. §§ 1114, 1116, 1117, and 1125 and Fla. Stat. Ch. 495.141;

H.     That Plaintiffs be awarded punitive damages for Defendants' willful and malicious acts of statutory and common law unfair competition; and

I.     That Plaintiffs be granted such other and further relief as this Court deems just and proper.

*[signatures on following pages]*

CASE NO. _____

Date: January 22, 2020                    Respectfully submitted,

                                          **LOTT & FISCHER PL**

                                          _____
                                          Ury Fischer
                                          Florida Bar No. 048534
                                          E-mail: ufischer@lottfischer.com
                                          Leslie J. Lott
                                          Florida Bar No. 182196
                                          E-mail: ljlott@lottfischer.com
                                          Giulia C. Farrior
                                          Florida Bar No. 1011300
                                          E-mail: gfarrior@lottfischer.com
                                          255 Aragon Avenue, Third Floor
                                          Coral Gables, FL 33134
                                          Telephone: (305) 448-7089

                                          *Attorneys for Plaintiffs NFL Properties LLC,*
                                          *Forty Niners Football Company LLC, and*
                                          *Kansas City Chiefs Football Club, Inc.*

CASE NO. _____

## VERIFICATION

I, Dolores DiBella, Vice President of Legal Affairs for the National Football League, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I have read the foregoing Verified Complaint and know the contents thereof, that the same are true to my knowledge except as to matters therein stated to be alleged on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this verification was executed on January __20__, 2020, in New York, New York.

Dolores DiBella

**LOTT & FISCHER, PL** • 255 Aragon Avenue • Third Floor • Coral Gables, FL  33134
Telephone: (305) 448-7089 • Facsimile: (305) 446-6191